**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 24-80980-CV-MIDDLEBROOKS**

SECURITIES AND EXCHANGE COMMISSION,

 Plaintiff,

vs.

WELLS REAL ESTATE INVESTMENT, LLC,
JANALIE C. JOSEPH
A/K/A JANALIE C. BINGHAM, and
JEAN JOSEPH,

 Defendants.

CAMBRIDGE REAL ESTATE MANAGEMENT, LLC,
60 YACHT CLUB, LLC, 112 SOUTH OLIVE, LLC,
791 PARKSIDE HOME, LLC, 910 PARKSIDE, LLC,
930 PARKSIDE, LLC,
976 PALM BEACH SQUARE, LLC,
1070 BOCA RATON SQUARE, LLC,
2082 PARADISE PALM, LLC,
2295 CORPORATE BLVD LLC, 4050 NW, LLC,
4100 HOSPITAL OFFICE, LLC, 4800 FEDERAL, LLC,
7352 VALENCIA, LLC, 7483 VALENCIA, LLC,
BOCA DEERFIELD PROPERTIES, LLC,
DAYBREAK HOME, LLC,
GLOBE OFFICES, LLC, GLOBE PROPERTY OFFICES, LLC,
LW SQUARE OFFICE, LLC,
MARTINIQUEÂ INVESTMENTS LLC
a/k/a MARTINIQUE'S INVESTMENTS LLC,
OAKLAND LAND PROPERTY, LLC, and
SOUTH OLIVE OFFICE, LLC,

 Relief Defendants.

_____/

**<u>RECEIVER'S SIXTH INTERIM STATUS REPORT</u>**

Andres Rivero, as receiver (the "Receiver") for the Receivership Entities,[1] files his Sixth Interim Status Report setting forth his activities and efforts to fulfill his duties pursuant to the Order under which he was appointed for the period from October 1, 2025, through December 31, 2025 (the "Reporting Period").

---

[1] "Receivership Entities" refers to: Wells Real Estate Investment, LLC; Cambridge Real Estate Management, LLC, 60 Yacht Club, LLC, 112 South Olive, LLC, 791 Parkside Home, LLC, 910 Parkside, LLC, 930 Parkside, LLC, 976 Palm Beach Square, LLC, 1070 Boca Raton Square, LLC, 2082 Paradise Palm, LLC, 2295 Corporate Blvd. LLC, 4050 NW LLC, 4100 Hospital Office, LLC, 4800 Federal, LLC, 7352 Valencia, LLC, 7483 Valencia, LLC, Boca Deerfield Properties, LLC, Daybreak Home, LLC, Globe Offices, LLC, Globe Property Offices, LLC, LW Square Office, LLC, Martiniqueâ Investments, LLC a/k/a Martinique's Investments LLC, Oakland Land Property, LLC, and South Olive Office, LLC.

**Table of Contents**

I.    BACKGROUND ................................................................................................................. 1

II.   ACTIONS TAKEN BY THE RECEIVER DURING THE REPORTING PERIOD  1

   A.   Employment of Professionals ................................................................................. 1

   B.   Preserving Receivership Real Properties ............................................................. 2

      i.     Management of Properties ................................................................................ 2

      ii.    The Commercial Properties .............................................................................. 3

      iii.   The Residential Properties ............................................................................... 4

III.  FINANCIAL AFFAIRS ..................................................................................................... 8

   A.   Financial Accounts ................................................................................................. 8

IV.   LITIGATION ...................................................................................................................... 9

   A.   Ongoing Legal Proceedings Involving the Receivership Defendants ................ 9

   B.   The Estate's Claims against Third Parties ......................................................... 10

V.    ADMINISTRATION OF RECEIVERSHIP ESTATE ................................................. 16

   A.   Cash on Hand and Administrative Expenses ..................................................... 17

   B.   Claims ..................................................................................................................... 17

   C.   Communications ................................................................................................... 18

   D.   Recommendations ................................................................................................. 19

## I.     BACKGROUND

The Receiver filed his First Interim Report [ECF No. 74] on October 30, 2024. The First Interim Report provides background information on the events that led to the appointment of the Receiver and a detailed description of the Receivership Defendants.[2] For brevity, the Receiver will not repeat all the information contained in the First Interim Report but refers all interested parties to the First Interim Report for additional background information.

On August 14, 2024, the Court entered an Order granting the SEC's Emergency *Ex Parte* Motion and Memorandum of Law for Asset Freeze and Other Relief [ECF No. 12] ("Asset Freeze Order") and an Order granting the SEC's Emergency *Ex Parte* Motion and Memorandum of Law for Appointment of Receiver [ECF No. 11] ("Receivership Order"). Among other things, the Receivership Order appointed Andres Rivero as Receiver over the Receivership Defendants and the Asset Freeze Order placed a temporary injunction against all bank and brokerage accounts owned by the Receivership Defendants. Additionally, on September 17, 2024, the Court entered an Order Granting Preliminary Injunction [ECF No. 65] ("Preliminary Injunction"), expanding the temporary injunction previously entered in the Asset Freeze Order.

## II.     ACTIONS TAKEN BY THE RECEIVER DURING THE REPORTING PERIOD

### A.  Employment of Professionals

The Receiver continues to work with his counsel Rivero Mestre, his forensic accountants EisnerAmper, his real estate counsel Day Pitney, his residential real estate broker the Keyes Company, his commercial real estate brokers Fausto and Florida Commercial Realty, his

---

[2] All terms will have the same meaning as defined in the First Interim Report.

litigation counsel DVC, and his non-testifying expert in his FINRA arbitration proceeding against Interactive Brokers, Perry.

During the Reporting Period, the Receiver has continued to use the services of these professionals. The professionals have been instrumental to the Receiver's success in this case thus far, helping him with marshalling, securing the various Receivership Defendants' assets, identifying and recovering additional assets for the benefit of the Estate, assisting the Receiver with reviewing and negotiating potential sale terms for several of the Receivership properties, and assisting the Receiver with prosecuting his claims against multiple third parties who assisted, aided and abetted, and facilitated the fraudulent scheme orchestrated by Wells, through Defendants Bingham and Joseph.

### B.  Preserving Receivership Real Properties

### i.  *Management of Properties*

As stated in the Receiver's prior Status Reports, the primary assets in the Receivership Estate are real properties located across south Florida. The Receiver, with the assistance of his professionals, has continued to oversee the management of the Receivership properties during the Reporting Period. The properties within the Receivership Estate are categorized as: (1) the commercial properties (the 4800 Federal Property, the 4050 NW Property, and the Oakland Land Property) and; (2) the residential properties (the 930 Parkside Property, the 60 Yacht Club Property, the 976 Palm Beach Property, the 910 Parkside Property, and the 1070 Boca Property). Tasks related to the management of the properties include maintenance of landscaping, scheduled cleaning of premises, and timely paying of utility bills.

### ii.    The Commercial Properties

The Receiver assumed control of commercial properties owned by Receivership Defendants 4100 Hospital, LW Square, 4800 Federal, 4050 NW, and Oakland Land Property. During the last reporting period, the Oakland Land tenant vacated the premises. Additionally, the 4100 Hospital and LW Square properties were, upon Court approval, abandoned. *See* ECF No. 121.

As reported in the last status report, the Receiver was working on finalizing the sale of the Oakland Land property, which was being marketed by the Receiver's commercial real estate agent Fausto. On October 14, 2025, the closing on the sale of the Oakland Land properties occurred. Prior to closing on the sale, the Receiver had to deal with resolving a potential issue on the title of the Oakland Land Property.

While preparing the closing documents for the sale of the Oakland Land property, the Receiver discovered that, on February 10, 2025, an individual identified as Robert Pietz filed a Reinstatement for Oakland Land with the Florida Department of State, Division of Corporations (Sunbiz), falsely naming himself as "President" and "Froogle, Inc." as the owner of Oakland Land. This filing was made without prior authorization or the Receiver's knowledge. In an effort to resolve what was a potential cloud on title, the Receiver filed an emergency motion with the Court to re-confirm his authority to act on behalf of Oakland Land LLC. *See* ECF No. 150. On October 22, 2025, the Court entered an order stating that the Receiver has authority to act on behalf of Oakland Land, and such capacity included authorization to execute instruments related to the sale of property owned by the entity. *See* ECF No. 154.

Additionally, during the Reporting Period the Receiver filed his motion to approve his settlement with the lender of the 4800 Federal Property and to authorize executing a deed in lieu

3

of foreclosure to transfer title of the property back to the lender. *See* ECF No. 159. Prior to settling on a deed in lieu of foreclosure with the lender, the Receiver was working with Florida Commercial Realty to market the 4800 Federal Property. However, the 4800 Property was not procuring viable offers.

On November 17, 2025, the Court entered an order granting the motion approving the Receiver's settlement with the 4800 Federal property lender and authorizing the transfer of the property's title back to the lender. *See* ECF No. 161. Following obtaining the Court's approval, the Receiver executed the deed on December 1, 2025, in exchange for the $10,000.00 settlement amount from the lender.

Accordingly, the only remaining commercial property as of the end of the Reporting Period is the 4050 NW property, which is vacant. The 4050 NW property is a standalone two-story commercial building located in Plantation, Florida. There has been no significant change in the status of the 4050 NW property since the previously filed status reports. During the Reporting Period, the Receiver has begun negotiating a plan of disposition for the 4050 NW property with its mortgage lender.

### iii.    *The Residential Properties*

The Receiver also assumed control over residential properties located throughout Boca Raton, West Palm Beach, and Broward County, Florida. Like the commercial properties, some residential properties had tenants while others were vacant. Currently, all residential properties are vacant. The pending foreclosure actions initiated by mortgage lenders and Homeowners Associations ("HOAs") discussed in prior status reports remain stayed. The Receiver and his counsel continue to engage in discussions with the lenders and HOA creditors for the residential properties. Additionally, as previously reported, the Receiver's real estate broker, Keyes, has

listed all the residential properties on the market and continues to host showings to potential buyers.

During the last reporting period, the Receiver filed a motion seeking approval of the settlement agreement with the lender for the 976 Palm Beach Square property and authorization to execute a deed in lieu of foreclosure in favor of the lender. *See* ECF No. 122. The Court granted the motion, and the Receiver thereafter executed the deed, conveying title of the property to the lender. In exchange for the deed, the Receiver received a total sum of $8,500.00. Accordingly, the 976 Palm Beach Square property is no longer part of the Receivership Estate.

Additionally, as reported in the last status report, the 60 Yacht Club, LLC property was sold on September 12, 2025, and was no longer part of the Receivership Estate during the Reporting Period. Moreover, as discussed in more detail below, during the Reporting Period the Receiver closed on the sale of the 1070 Boca property. Accordingly, as of the date this report is being filed, the only remaining residential properties are the 930 Parkside property and the 910 Parkside Property.

### a.  The 930 Parkside Property

The 930 Parkside property is a residential home located in Boca Raton, Florida. The 930 Parkside property is currently vacant and does not generate income for the Receivership Estate. During the Reporting Period, the Receiver continued to pay the monthly electric and water utility bills as they became due. The Receiver also continues to maintain the lawn and pool for the property.

As reported in the last status report, the Receiver obtained an offer from a potential buyer to purchase the 930 Parkside Property for $1.83 million. That buyer reduced the offer price to $1,700,000.00 following a pre-purchase inspection of the property. The Receiver then obtained a

5

second offer on the property for $1,775,000.00, which the Receiver accepted. After accepting the $1.75 million offer, the Receiver engaged in negotiations to settle with the mortgage lender and the homeowner's association. The lender agreed to settle its claim for $1,650,000.00, and the Receiver circulated a proposed settlement agreement to the lender for its consideration. Additionally, the Receiver was also working on a settlement with the HOA. Unfortunately, during this process, the buyer retracted his offer and pulled out of the purchase.

Accordingly, the Receiver advised Keyes to continue listing and showing the property in an effort to obtain new offers. The property is currently listed for sale at $2.1 million. However, due to structural defects—primarily issues related to the roof—prospective buyers have been unwilling to submit offers near the asking price. To facilitate a potential sale, the Receiver is considering reducing the listing price. Other than these considerations, there have been no material changes in the status of the 930 Parkside property since the last status report.

### b. The 910 Parkside Property

During the Reporting Period, the Receiver continued to pay the property's electricity and water bills and to maintain the property, including landscaping and pool servicing.

During the Reporting Period the Receiver obtained an offer to purchase the property from a prospective buyer in the amount of $1.8 million. After negotiating with the buyer, the Receiver was able to get the buyer to agree to a purchase price of $1,805,000.00.

In anticipation of the potential sale of the 910 Parkside property, the Receiver has also begun negotiations to settle with the property's mortgage lender and the homeowner's association. The Receiver successfully negotiated a settlement with the homeowner's association for the amount of $10,000.00 which includes a cut of several late fees 910 Parkside owed to the homeowner's association for past due payments.

In addition to negotiating with the homeowner's association, the Receiver also initiated discussions with the mortgage lender for the 910 Parkside property. As part of those discussions, the lender requested and was permitted to conduct a walkthrough of the property, which took place in December. The lender has since submitted a counteroffer, and the Receiver continues to negotiate. As of the end of the Reporting Period, a settlement with the lender has not been finalized.

### c.   *The 1070 Boca Property*

The 1070 Boca property is a beachfront residential apartment located in Riviera Beach, Florida. The 1070 Boca Property is vacant and does not generate any rental income. Like the other Receivership properties, the lender has filed a foreclosure action against 1070 Boca property, which the Receiver has stayed. The Receiver continues to pay the utility bills for the property as the bills become due.

During this Reporting Period the Receiver obtained an offer to purchase the 1070 Boca property. The Receiver and the buyer agreed to a purchase price of $842,500.00. On December 18, 2025, the Receiver filed his motion for authority sell real property and to approve sale [ECF No. 171] (the "1070 Boca Sale Motion"). The Court granted the 1070 Boca Sale Motion on December 29, 2025. *See* ECF No. 173. As detailed in the 1070 Boca Sale Motion, the Receiver also reached a settlement with the mortgage lender and the condominium association of the property.

The closing on the sale of the 1070 Boca property took place on December 31, 2025. Accordingly, the 1070 Boca Property is no longer part of the Receivership Estate.

### III.     FINANCIAL AFFAIRS[3]

Defendants purportedly raised at least $56 million dollars in investor funds. *See* the Complaint at ¶1. Defendants, personally and through a web of sales agents, told investors that these funds were going to be used to invest in income generating real estate development projects. However, of the $56 million dollars, approximately $11 million dollars were traced to the actual purchase of real estate. *See id.* at ¶3. According to the Complaint, and based on the Receiver's investigations, the remaining funds were likely diverted by Bingham and Joseph to engage in speculative trading and to purchase luxury items. *See id.* at ¶72.

### A.  Financial Accounts

The Receivership Entities' financial accounts – including several bank and brokerage accounts—were frozen in accordance with the Receivership Order. The Receiver took control of the Receivership Defendants' existing financial accounts and opened a depository account for the Receivership during the First Reporting Period. All financial accounts have been closed and liquidated. There has been no change in the status of the Receivership Defendants' financial accounts since the First Reporting period.

### B.  The Receivership Defendants' Business Operations

As described in the prior Status Reports, the business operations of the Receivership include maintaining the Receivership Entities' properties that were purchased in furtherance of Bingham and Joseph's fraudulent real estate investment scheme. The purchases of these

---

[3] The Receiver has opened a Wells Receivership depository account with City National Bank. All funds deposited into the Receivership Estate, primarily through rental incomes and profits from the sale of Receivership Property, are being deposited into the Wells Receivership depository account. Accordingly, the financial accounts described in Section III(A) *infra* are not being utilized and there has not been a change in the status of these accounts from the First Reporting period.

properties were financed through subprime mortgages from hard money lenders that are all in default, leaving the Receivership Estate owing over $20 million in mortgages.

Prior to the Receivership, these properties were managed through the Receivership Defendant entities. The properties failed to generate significant income to keep up with mortgage payments and monthly bills. Since taking control of the properties, the Receiver has worked on maintaining the properties by ensuring that utility bills are timely paid, and the properties' landscaping, and other maintenance needs are met.

The Receiver also continues to work towards improving the overall indebtedness of the Receivership Estate. Primarily, this is being done through sale or disposition of the Receivership Estate's properties. Proceeds from the sales are being used to pay off lenders as well as any home or condominium association that may have a claim against the property.

The Receiver will continue to maintain the Receivership Entities' properties and business operations while the Receiver determines the best way to dispose of the Receivership properties.

## IV.   LITIGATION

### A. Ongoing Legal Proceedings Involving the Receivership Defendants

As described in the prior Status Reports, the Receiver has cancelled pending foreclosure sales of Receivership Properties and has successfully stayed all pending foreclosure and civil actions against the Receivership Entities. Moreover, no new foreclosure actions were filed during the Reporting Period. All foreclosure actions remained stayed during this Reporting Period. Additionally, the 976 Palm Beach Square eviction proceedings reported in the Fourth Status Report has been dismissed.

**B. The Estate's Claims against Third Parties**

During this Reporting Period, the Receiver and his professionals initiated litigation against several third parties who the Receiver determined were entities or individuals who were either involved in or benefited from Wells' investment scheme. The Receiver moved for leave to bring claims against certain third parties based on their involvement with, and/or facilitation of the alleged fraud perpetrated by, Wells Real Estate Investment, LLC ("Wells"), at the direction of Janalie C. Bingham and Jean Joseph, and/or in ancillary actions to recover voidable transfers against third parties. *See* ECF No. 123 and ECF No. 130. The Court granted the Receiver's motions to file such claims. *See* ECF No. 127 and ECF No. 131.

In addition to filing third party actions, the Receiver has continued efforts to obtain communications and documentation that may reveal more insight as to individuals or entities who received funds or were complicit in executing Bingham's scheme. As part of these efforts, the Receiver served third parties such as Interactive Brokers with subpoenas during the Reporting Period.

Moreover, the Receiver's counsel, Rivero Mestre, has sent demand letters to third parties including sales agents who were involved in soliciting investors, and net winning investors who received a surplus on their investments in an effort to recover additional funds for the benefit of the Receivership Estate.

i.      *The Receiver's Third Party Claims*

The Receiver has initiated ancillary lawsuits against third parties on behalf of Wells and the Receivership Entities pending in the Southern District of Florida.

10

a. ***Andres Rivero as Receiver for Wells Real Estate Investment, LLC et al. v. Banamerica Financial Group Inc., et al,* case no. 25-cv-81001-DMM (S.D. Fla.)**

On August 13, 2025, the Receiver filed a complaint against third parties Banamerica Financial Group Inc., Confia Financial Corporation, Financial Rescue & Associates LLC, Gianotti Family Office LLC, L&E Financial Services LLC, Wealth Influencers Network LLC, Angela Ruff, David Bradford, and Francisco Herrera (collectively "the Third Party Defendants"). *See* case no. 25-cv-81001-DMM at ECF No. 1. The Receiver is bringing fraudulent transfer claims pursuant to the Florida Uniform Fraudulent Transfer Act ("FUFTA"), and unjust enrichment claims against the Third Party Defendants. The Receiver is seeking recovery of voidable transfers the Third Party Defendants received from Wells (or other Receivership Entities) primarily as commissions as sales agents. The individual transfer summaries for each defendant are attached as exhibits to the Complaint. *See id.* at Exs. A-I.

As reported in the last status report the following third party defendants were either served or agreed to waive service: Confia Financial Corporation; Financial Rescue & Associates, LLC; Gianotti Family Office LLC; Wealth Influencers Network LLC; and Francisco Herrera. During this Reporting Period third party defendants Banamerica Financial Group, Inc., L&E Financial Services LLC, and David Bradford were served. Third party defendant Angela Ruff still has not been served despite the Receiver's process server making multiple attempts at service. The Receiver's process server believes that Ruff is evading service. On December 10, 2025, the Receiver filed a motion for extension of time to serve Ruff. *See Andres Rivero as Receiver for Wells Real Estate Investment, LLC et al. v. Banamerica Financial Group Inc., et al*, case no. 25-cv-81001-DMM (S.D. Fla.) at ECF No. 27. The Court entered the order granting the Receiver an extension through February 2, 2026, to have Ruff served. *See id.* at ECF No. 33. The Receiver will continue his best efforts to serve Ms. Ruff.

11

During the Reporting Period the Receiver also entered into a settlement of his FUFTA claim against defendant Wealth Influencers Network LLC ("Wealth Influencers"). Wealth Influencers agreed to settle the Receiver's claim as follows: payment to the Receiver in the amount of $607,907.38 (the "Settlement Amount") pursuant to an agreed upon payment plan towards satisfying the Settlement Amount; (b) a personal guarantee of the full repayment of the Settlement Amount, which will remain in full effect until the Settlement Amount and any liquidated damages are paid to the Receiver in full; (c) mutual releases of any and all claims that may exist between the Receiver and Wealth Influencers at the time of entering the settlement agreement; and (d) a dismissal of the Receiver's claims in the FUFTA Action against Wealth Influencers. Pursuant to the settlement agreement, Wealth Influencers was dismissed from this action on December 29, 2025. *See* ECF No. 38.

The Receiver has been in communication with counsel for the other parties that have been served, some of which have expressed an interest in settling. The Receiver plans to continue to engage in such negotiations in hopes of coming to a resolution without having to engage in further litigation.

b. ***Andres Rivero as Receiver for Wells Real Estate Investment, LLC et al. v. Empire Insurance Services, Inc.,*** **case no. 25-cv-81002 (S.D. Fla.)**

On August 13, 2025, the Receiver filed a complaint against third party Empire Insurance Services, Inc. ("Empire"), for recovery of fraudulent transfers pursuant to FUFTA, and unjust enrichment claims. *See* case no. 25-cv-81002 at ECF No. 1. The Receiver is seeking recovery of voidable transfers that Empire received from Wells (or other Receivership Entities) primarily in fees to pay for insurance premiums on insurance policies it issued for several of the Receivership Entity owned properties. As alleged in the complaint, these policies were in some instances non-

12

existent, and the premiums were inflated, resulting in harm to the Receivership Entities. *See id.* at ECF No. 1 ¶ 48.

Since initiating the lawsuit, Empire has been served. The Receiver and Empire had a joint scheduling conference in accordance with applicable federal rules of procedure on September 16, 2025. On September 22, 2025, the parties filed a joint report setting forth the proposed schedule the parties agreed to during their conference. *See id.* at ECF No. 25. Additionally, on September 26, 2025, Empire filed its answers and affirmative defenses, which the Receiver has since moved to strike.

The parties have also engaged in settlement communication in an effort to try and resolve this matter.

c. ***Andres Rivero, as Receiver for Wells Real Estate Investment, LLC et al. v. Reynald Germinal,*** **case no. 25-cv-81003 (S.D. Fla.)**

On August 13, 2025, the Receiver filed a complaint against third party Reynald Germinal for the recovery of fraudulent transfers pursuant to FUFTA, and unjust enrichment claims. *See* case no. 25-cv-81003 at ECF No. 1. The Receiver is seeking recovery of voidable transfers that Germinal received from Wells (or other Receivership Entities) for purported "services rendered." As alleged in the complaint, the true nature of the services Germinal provided the Receivership Entities was to assist in speculative trading of fraudulently procured investor funds. *See id.* at ¶ 48. Germinal received a total of $280,450.00 in fraudulent voidable transfers. *See id.* at ¶ 45.

As reported in the last status report, Germinal's motion to dismiss was pending before the Court. During this Reporting Period the Court entered an order denying Germinal's motion to dismiss and instructing Germinal to file an answer to the Receiver's complaint. *See Andres Rivero, as Receiver for Wells Real Estate Investment, LLC et al. v. Reynald Germinal*, case no. 25-cv-81003 (S.D. Fla.) at ECF No. 21. Germinal filed his answer and affirmative defenses on

November 24, 2025. *See id.* at ECF No. 22. The Receiver filed a motion to strike Germinal's defenses on December 29, 2025. *See id.* at ECF No. 25.

During the Reporting Period the Receiver and Germinal also agreed to have a settlement conference with the presiding Magistrate judge in lieu of mediation. The conference will take place on January 27, 2026.

d. ***Andres Rivero, as Receiver for Wells Real Estate Investment, LLC et al. v. Safe Life Solutions LLC,* case no. 25-cv-81062 (S.D. Fla.)**

On August 26, 2025, the Receiver filed a complaint against third party Safe Life Solutions LLC ("Safe Life") for the recovery of fraudulent transfers pursuant to FUFTA and unjust enrichment claims. *See* case no. 25-cv-81062 at ECF No. 1. The Receiver is seeking recovery of voidable transfers that Safe Life received from Wells (or other Receivership Entities) as compensation for its work as a sales agent. In total, Safe Life received $547,731.47 in voidable transfers. *See id.* at ¶ 44.

During the Reporting Period, on October 27, 2025, the Receiver served Safe Life with the lawsuit. The Court ordered Safe Life to file a status report regarding its efforts to obtain counsel. *See* case no. 25-cv-81062 at ECF No. 8. Safe Life filed its status report on December 19, 2025 [ECF No. 8] and thereafter filed a motion to be referred to the voluntary attorney program [ECF No. 10].

e. ***Andres Rivero as Receiver of Wells Real Estate Investment, LLC et al. v. Provident Trust Group LLC, et al.,* case no. 25-cv-81005 (S.D. Fla.)**

On August 13, 2025, the Receiver filed a complaint against third parties Provident Trust Group LLC, Wealth Space LLC, Sagacious Business Services, Corp., Genesis Asset Management Strategies Group LLC, Kartom Consulting Partners LLC, BBIG Financial Solutions LLC, and Lan Nguyen for the recovery of fraudulent transfers pursuant to FUFTA, and

unjust enrichment claims. *See* case no. 25-cv-81005 at ECF No. 1. In the lawsuit, the Receiver is seeking recovery of voidable transfers the defendants received from Wells (or other Receivership Entities) primarily as compensation for their work as sales agents.

During the last Reporting Period, Genesis Asset Management Strategies Group LLC ("Genesis") and Provident Trust Group LLC filed waivers of service. *See id.* at ECF Nos. 11, 13. The Receiver served BBIG Financial Solutions LLC, Wealth Space LLC and Kartom Consulting Partners LLC during this Reporting Period. *See id.* at ECF Nos. 19, 20, and 28. Lan Nguyren and Sagacious Business Services, Corp. have still not been served. The Receiver will continue to attempt service on Lan Nguyen and Sagacious Business Services Corp., or consider alternative means of service on these defendants.

During the last reporting period, the Receiver engaged in settlement negotiations with defendant Genesis Asset Management Strategies Group LLC ("Genesis"). During the Reporting Period, the Receiver filed a motion to approve the final settlement between him and Genesis. *See* case no. 24-cv-80980 at ECF No. 155.

### f.   *The FINRA Arbitration Against Interactive Brokers*

On August 13, 2025, the Receiver submitted a claim to the Financial Industry Regulatory Authority ("FINRA") to initiate arbitration proceedings against Interactive Brokers. The Receiver seeks to recover in excess of $11.9 million in trading losses and fraudulent transfers from Receivership Entities to Interactive Brokers for Interactive Brokers' failure to evaluate, monitor, supervise, and take corrective action despite numerous red flags in the structure and trading activity of the Receivership Entities' accounts. The Receiver has reason to believe that Interactive Brokers' negligence and otherwise improper conduct constitute violations of FINRA and other regulatory rules, industry standards, and common law fiduciary duties.

15

During this Reporting Period, the Receiver worked on making required discovery disclosure of documents in the FINRA proceeding. The Receiver has also been working with DVC to select the arbitration panel.

## V.   ADMINISTRATION OF RECEIVERSHIP ESTATE

The Receiver continues to utilize the services of Rivero Mestre to assist with the administration of the Receivership Estate; EisnerAmper to provide accounting, tax, and forensic services; Day Pitney to serve as real estate counsel; and the Keyes Company to assist the Receiver with marketing and selling the Residential properties. Additionally, the Receiver utilized the services of Fausto Commercial to assist with the marketing and sale of the Oakland Land property.[4]

In addition, as reported in the last status report, the Receiver engaged DVC to assist the Receiver with bringing fraudulent transfer and unjust enrichment claims against several third parties who assisted, aided and abetted, or otherwise enabled Bingham and Joseph's fraudulent scheme and who in turn received compensation or payment from any Receivership Entities. The Receiver also engaged Perry as a non-testifying expert provide consultation to the Receiver and assist in the review and interpretation of trading records, account documentation, and regulatory requirements, and advise on the viability and scope of potential claims.[5]

---

[4] The qualifications of these professionals are detailed in the First, Second, and Third Status Reports [ECF Nos. 74, 86, 96, and 99].

[5] DVC's qualifications are detailed in the Receiver's Motion to Employ Damian Valori Culmo on Contingency Fee Arrangement and for Leave to Prosecute Contingent Litigation Claims [ECF No. 123] and Perry's qualifications are detailed in the Receiver's Application to Employ Braden Perry and Kennyhertz Perry, LLC [ECF No. 132].

### A. Cash on Hand and Administrative Expenses

The Receiver presently holds a total of $1,273,396.96[6] in cash on hand in two fiduciary accounts at City National Bank in Miami, Florida, as follows:

Receivership Account: $1,271,057.89

Money Market Account: $2,339.07

During the Reporting Period, the Receiver made disbursements totaling $153,264.31 from the Receivership Account for necessary expenses to preserve and administer the Receivership Estate and to pay its professionals. Such expenses include electric, water, trash, and sewer bill payments, and other expenses related to the operation of the real properties. Attached here as **Exhibit A** is a detailed statement of the Receivership Estate's Receipts and Disbursements during this Reporting Period.

### B. Claims

The Receiver foresees developing a claims process to address and verify the various claims of creditors including mortgage lenders and HOA's with purported claims against the Receivership Estate. Individual investors may also have claims for monetary damages because of the total or partial loss of their investments as well as other damages incurred because of a loss of their investments.

The Receiver sought quotes from multiple companies to assist him with setting up the claims process. As reported in the previous reporting period, the Receiver met with and evaluated potential vendors that provide claims administration services and software solutions designed to streamline document management, reporting, and communications. During this Reporting Period the Receiver determined one such company, Stretto, would be most cost-

---

[6] This amount reflects the balance in the accounts as of the date of filing this Status Report.

effective. The Receiver is in the process of reviewing Stretto's proposed engagement letter and has been working on gathering information, such as a notice list of investors, for Stretto to begin setting up the claims process once the engagement is signed, the Court approves the engagement, and the Court approves the Receiver's administration process.

### C. Communications

The Receiver continues to respond to inquiries from creditors, investors, and other interested parties usually through e-mail and telephone calls. The Receiver continues to maintain an email address for general inquiries: wellsreceiver@riveromestre.com, and a website: https://wellsrealestateinvestmentreceivership.com/, to provide up to date information for investors and other interested parties.

The Receiver has used the website to post copies of court filings, correspondence with investors, and other pertinent information. The Receiver has also prepared and posted updates on his website, including letters to investors. The Receiver will continue to utilize the website, e-mail, and telephone, as the primary method of communicating with investors, creditors and other interested parties throughout the course of the Receivership

During the last reporting period, the Receiver also sent demand letters to individuals who realized a net gain from their investments with Wells and the related real estate investment scheme described in the SEC's complaint or received commissions as sales agents for Wells. The Receiver is currently in the process of reviewing and negotiating settlement offers with individuals who received a demand letter. During this reporting period, the Receiver successfully reached a settlement with one such individual who agreed to pay the Receiver a lump sum payment of $12,000.00 which would go towards the Receivership Estate. The Receiver plans to file a motion to approve the settlement with the Court.

The Receiver has also continued to be in communication with known creditors, primarily mortgage lenders, HOAs, and Condominium Associations. The Receiver's communications with creditors and lenders are primarily through phone or e-mail. These communications generally concern negotiating potential settlements of creditor and lender claims against the Receivership Estate.

### D. Recommendations

The Receiver continues to secure and maintain the assets of the Receivership Entities, analyze the misuse of investor funds, and respond to inquiries from the investors, creditors and other interested parties. The Receiver anticipates taking the following actions: (i) continuing to operate and maintain the Receivership properties until the best course of disposition for each property is determined so that harmed investors obtain the highest possible recovery; (ii) providing investors with updates through the Receivership website; (iii) negotiating and settling creditor claims against the Receivership Estate; (iv) responding to inquiries from investors, creditors, and interested parties; and (v) pursuing recoveries on behalf of the victim investors.

Dated: January 30, 2026

Respectfully submitted,

**RIVERO MESTRE LLP**
*Receiver for the Receivership Defendants*
2525 Ponce de Leon Blvd.
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com

*/s/ Andres Rivero*
Andres Rivero
Fla. Bar. No. 613819

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 30, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being electronically served today on all counsel of record through CM/ECF.

By: */s/ Andres Rivero*
Andres Rivero

20